IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| NORTHFIELD LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| VS. | § | |
| | § | CIVIL ACTION NO. 1:26-CV-00092 |
| ONCHAINWEB3, a general partnership; AVA LEE; the BINANCE OFF-RAMP DEFENDANT; and JOHN DOES 1 – 20, | § | JUDGE MICHAEL J. TRUNCALE |
| | § | |
| | § | |
| | § | |
| *Defendants*. | § | |

## ORDER GRANTING PLAINTIFF'S MOTION FOR EMERGENCY *EX PARTE* TEMPORARY RESTRAINING ORDER AND ORDER AUTHORIZING EXPEDITED DISCOVERY

Plaintiff Northfield LLC (Northfield) has filed an Emergency Motion for *Ex Parte* Temporary Restraining Order and Order Authorizing Expedited Discovery (the Motion) [Dkt. 2]. Northfield seeks an order freezing bank accounts associated with Defendants Onchainweb3, Ava Lee, the Binance Off-Ramp Defendant, and John Does 1-20 and authorizing Northfield to issue subpoenas to various third parties likely to be in possession of information about the Defendants. The Court has reviewed Northfield's Motion and finds that, for the reasons set out therein, it faces a risk of irreparable harm if the requested relief does not issue. The Court also finds that notice to the Defendants should not be required. Accordingly, Northfield's Motion is hereby **GRANTED**.

### I. BACKGROUND

Northfield alleges that Defendants used a sham investment platform to steal over a million dollars from individuals looking to invest in cryptocurrency. *See* [Dkt. 1 at ¶¶ 4, 74]. One such individual (the Victim) assigned her claims against Defendants to Northfield. *Id.* at ¶ 6. In April 2025, Defendant Ava Lee (Lee) contacted the Victim and asked her to join an online group dedicated to sharing cryptocurrency-trading advice. *Id.* at ¶ 33. To build credibility with the Victim, Lee claimed to work for a large investment bank and told the Victim that the leader of the online group, Emily Richardson (Richardson), was a

cryptocurrency expert. *Id.* at ¶ 34. Impressed by Lee's supposed credentials, the Victim eventually followed Lee's advice to open an account on Defendant Onchainweb3's investment platform and make an initial investment of $50,000. *Id.* at ¶ 36. Following the Victim's initial deposit, Lee offered to provide her with exclusive trading advice in exchange for a commission fee. *Id.* Once the Victim agreed, her Onchainweb3 account balance appeared to increase substantially. *Id.* at ¶ 37. Encouraged by this development, the Victim began investing even larger sums of money into her Onchainweb3 account. *Id.* Lee also urged the Victim to make these deposits by telling the Victim that she needed to keep investing to continue receiving trading tips. *Id.* at ¶ 38.

The Victim first attempted to withdraw funds from her Onchainweb3 account on April 30, 2025. *Id.* at ¶ 39. When she attempted to do so, Onchainweb3 notified her that her withdrawal could not be processed unless she paid additional fees. *Id.* The Victim complied, but she was still unable to withdraw funds. *Id.* Lee assured the Victim that she could complete her withdrawal by paying even more fees, which she did. However, her withdrawal remained "pending." *Id.* at ¶ 40. Then, on October 21, 2025, the Victim stumbled upon an online discussion naming Lee and Richardson as participants in known cryptocurrency scams. *Id.* Realizing she had fallen prey to a fraudulent scheme, the Victim immediately sought legal help. *Id.*

## II.  ANALYSIS

### A. Temporary Restraining Order

### 1. Procedural Requirements

The standard for issuing an *ex parte* temporary restraining order has both procedural and substantive components. Procedurally, the Court has the authority to issue an *ex parte* restraining order where (i) "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," and (ii) "the movant's attorney certifies in writing any efforts made to give notice and why it should not be required." *See* FED. R. CIV. P. 65(b)(1)(A)–(B).

Northfield satisfies both requirements. Northfield's Complaint and Motion, and the declaration of its expert, Evan Cole, show a substantial likelihood of immediate and irreparable injury or loss. These materials suggest that the Victim, who assigned her claims to Northfield, fell prey to a "pig-butchering" scam—a prevalent form of cybercrime featuring well-established and recognizable patterns of deception. *See* [Dkt. 1 at ¶ 32; Dkt. 2-1 at ¶ 3]. This Court, and several others, have issued *ex parte* restraining orders in similar cryptocurrency-fraud cases.[1] The facts of this case do not move the Court to deviate from its usual practice.

Northfield's attorney has also made a certified declaration explaining why notice should not be required. [Dkt. 2-2]. Courts may enter *ex parte* orders when providing notice to adverse parties would be impracticable or "would render fruitless [the] prosecution of the action." *Matter of Vuitton et Fils S.A.*, 606 F.2d 1, 5 (2d Cir. 1979); *see also, e.g.*, *First Tech. Safety Sys., Inc. v. Depinet*, 11 F.3d 641, 650 (6th Cir. 1993) (noting that *ex parte* order is justified where "the adverse party has a history of disposing of evidence or violating court orders or [] persons similar to the adverse party have such a history"). In the context of an order freezing assets, notice is unnecessary if the adverse parties "are likely to dissipate assets and destroy business documents." *Fed. Trade Comm'n v. Dluca*, No. 18-60379-CIV, 2018 WL 1830800, at *2 (S.D. Fla. Feb. 28, 2018), *report and recommendation adopted*, No. 0:18-CV-60379-KMM, 2018 WL 1811904 (S.D. Fla. Mar. 12, 2018). Under these circumstances, the very act of providing notice

---

[1] *See, e.g.*, *Harris v. Upwintrade.com*, 1:24-cv-00313-MJT, Dkt. 7 (E.D. Tex. Aug. 8, 2024) (Truncale, J.) (granting TRO in functionally identical pig-butchering case); *Cohn v. Popescu*, No. 1:24-cv-00337, 2024 WL 4525511 (E.D. Tex. Aug. 16, 2024) (Truncale J.) (same); *Ohlin v. Defendant 1*, No. 3:23cv8856-TKW-HTC, 2023 WL 3676797, at *3 (N.D. Fla. May 26, 2023) ("Considering the speed with which cryptocurrency transactions are made as well as the anonymous nature of those transactions, it is imperative to freeze the Destination Addresses to maintain the status quo to avoid dissipation of the money illegally taken from Plaintiffs."); *Jacobo v. Doe*, No. 1:22-CV-00672DAD-BAK (BAM), 2022 WL 2052637, at *3 (E.D. Cal. June 7, 2022) ("Because it would be a simple matter for [defendant] to transfer [the] cryptocurrency to unidentified recipients outside the traditional banking system and effectively place the assets at issue in this matter beyond the reach of the court, the court finds that plaintiff is likely to suffer immediate and irreparable harm in the absence of injunctive relief.") (cleaned up); *Astrove v. Doe*, No. 22-CV-80614-RAR, 2022 WL 2805315, at *3 (S.D. Fla. Apr. 22, 2022) (same).

would "cause immediate and irreparable injury or damages to the Court's ability to award effective final relief." *Id.* This rationale applies with special force in cryptocurrency-fraud cases.[2]

Here, the Court is satisfied that providing notice to Defendants would be impracticable and would defeat the purpose of prosecuting the lawsuit. *See* [Dkt. 1 at ¶¶ 7–10; Dkt. 2 at ¶ 6]. Northfield alleges that the Defendants are foreign nationals whose true identities are unknown. [Dkt. 1 at ¶¶ 7–10]. Further, none of the Defendants have known physical addresses, phone numbers, or email addresses. [Dkt. 2-1 at ¶ 18]. Despite "diligent investigation," Northfield's attorneys were only able to locate WhatsApp and Telegram accounts for Lee, and no points of contact for the other Defendants. *Id.* Because Northfield has no way to contact some or all of the Defendants, providing notice would be impracticable. *See Ohlin*, 2023 WL 3676797 at *2.

Northfield's allegations also support its contention that providing notice to the Defendants would render its lawsuit futile because it would merely prompt Defendants to hide their ill-gotten assets. *See* [Dkt. 2 at 6]. If, as alleged, Defendants misappropriated the Victim's funds by inducing the Victim deposit them into a phony investment account, it follows that they would likely conceal those same funds if given notice of Northfield's Motion. *See Ohlin*, 2023 WL 3676797 at *2. Under these circumstances, issuance of an *ex parte* order is justified. *See id.*

### 2. Substantive Requirements

Having found that Northfield meets the procedural requirements for issuance of an *ex parte* restraining order, the Court now turns to the substantive requirements. To obtain a temporary restraining order, a movant must show (1) a substantial likelihood of success on the merits, (2) a substantial threat of

---

[2] *See, e.g., Gaponyuk v. Alferov*, No. 2:23:CV-01317-KJM-JDP, 2023 WL 4670043, at *2 (E.D. Cal. July 20, 2023) (issuing *ex parte* asset-freeze TRO in similar crypto-fraud case, and writing that "federal district courts have granted *ex parte* relief in situations like this one, noting the risks that cryptocurrencies may rapidly become lost and untraceable."); *Ohlin*, 2023 WL 3676797, at *2 (notice not required where plaintiff offered declarations showing that the defendants were crypto-criminals, which gave the court "every reason to believe the Defendants would further hide those [stolen] assets if they were given notice"); *Jacobo*, 2022 WL 2052637, at *3 (notice not required because plaintiff made credible allegations that defendants were crypto-criminals, which "pose[d] a heightened risk of asset dissipation").

irreparable harm if the injunction does not issue, (3) that the threatened injury outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction is in the public interest. *Moore v. Brown*, 868 F.3d 398, 402–03 (5th Cir. 2017) (per curiam) (citing *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009)).

Northfield meets all four substantive requirements. On the merits, Northfield makes claims against the Defendants for violation of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), fraud, fraudulent inducement, and conversion. [Dkt. 1 at ¶ 1]. Northfield has alleged and provided evidence that the Defendants deceived the Victim and misappropriated her assets in what appears to have been an intentional scam. *See* [Dkt. 1 at ¶¶ 33–40; Dkt. 2-1]. Northfield's allegations bear all the telltale characteristics of a pig-butchering scam, suggesting that Northfield will indeed be able to prevail on its claims once a full evidentiary record is developed. *See* [Dkt. 1 at ¶¶ 33–40; Dkt. 2-1].[3]

Northfield has also demonstrated a substantial likelihood that he will suffer irreparable harm without the relief he seeks, for the same reasons outlined above. The instantaneous and opaque nature of cryptocurrency transactions, combined with the Defendants' cagey behavior, makes it unlikely that Northfield will recover his lost assets unless the Defendants are precluded from withdrawing or transferring the contents of their accounts. Accordingly, the Court finds that Northfield's request to freeze the Defendants' bank accounts is justified by a substantial threat of irreparable harm. *See Jacobo*, 2022 WL 2052637, at *3.

Next, the Court finds that the threatened injury to Northfield outweighs any harm the Defendants may suffer by virtue of having their accounts frozen. Again, maintaining the assets at the destination accounts is perhaps Northfield's only realistic chance to obtain recovery in this case. At worst, the

---

[3] The Court also notes that Northfield seeks an asset freeze in the form of a constructive trust over specific, traceable stolen assets. [Dkt. 2 at 12]. This type of relief is common in cryptocurrency-fraud cases. *See, e.g.*, *Yogaratnam v. Dubois*, No. CV 24-393, 2024 WL 758387, at *3 (E.D. La. Feb. 23, 2024) (issuing asset-freeze TRO in crypto-fraud case, noting that *"*numerous district courts . . . have issued a TRO in this exact circumstance to freeze a cryptocurrency asset," and collecting cases); *Jacobo*, 2022 WL 2052637, at *3 (issuing asset-freezing TRO where plaintiff sought constructive trust over allegedly stolen assets); *Gaponyuk*, 2023 WL 4670043, at *2 (same).

Defendants will be temporary unable to move assets if the injunction is later dissolved. *See Jacobo*, 2022 WL 2052637, at *6 (finding "[a] delay in defendant's ability to transfer the [allegedly stolen] assets only minimally prejudices defendant, whereas withholding injunctive relief would severely prejudice plaintiff by providing defendant time to transfer the allegedly purloined assets into other accounts beyond the reach of this court").

Finally, the Court finds that Northfield's requested injunction serves the public interest. Northfield's case is merely a drop in a vast ocean of similar scams. *See* [Dkt. 1 at ¶ 1]. A freezing order will serve the public interest here both by deterring would-be fraudsters and by "providing assurance to the public that courts will take action to promote . . . recovery of stolen assets when they can be readily located and traced to specific locations." *Jacobo*, 2022 WL 2052637, at *6; *see also, e.g.*, *Gaponyuk*, 2023 WL 4670043, at *3 (finding that asset freeze would "serve the public's interest in stopping, investigating, and remedying frauds").

### B. Expedited Discovery

Typically, parties may not seek "discovery from any source before the parties have conferred as required by Rule 26(f)." FED R. CIV. P. 26(d)(1). But expedited discovery before a Rule 26(f) conference is permitted where "authorized . . . by court order." *Id*. Although the Fifth Circuit has not adopted a standard by which authorization may be issued, several district courts in the Fifth Circuit apply a "good cause" standard to determine whether such an order should issue. *Cothran v. Koomson*, No. 4:20-CV-481-SDJ, 2020 WL 6450498, at *1 (E.D. Tex. Nov. 3, 2020) (Jordan, J.); *St. Louis Grp., Inc. v. Metals & Additives Corp.*, 275 F.R.D. 236, 239–40 (S.D. Tex. 2011) (collecting cases) (applying good cause standard). Good cause exists when "the need for expedited discovery in consideration of the administration of justice, outweighs the prejudice to the responding party."[4] *St. Louis Group*, 275 F.R.D. at 239 (internal quotation marks and citation omitted).

---

[4] More specifically, in determining whether good causes exists, a court weighs the following factors:

Many courts, including this Court, have authorized expedited discovery from cryptocurrency exchanges in cryptocurrency-fraud cases like this one. *See, e.g.*, *Harris*, No. 1:24-cv-00313-MJT, at p. 14 (authorizing expedited discovery); *Cohn*, 2024 WL 4525511, at *5 (same); *Strivelli v. Doe*, No. 22-cv-22060, 2022 WL 1082638, at *2 (D.N.J. Apr. 11, 2022) (authorizing expedited discovery from cryptocurrency exchanges and noting "the Court's review of cryptocurrency theft cases reveals that courts often grant motions for expedited discovery to ascertain the identity of John Doe defendants."); *Licht v. Ling*, No. 3:23-CV-1018-X, 2023 WL 4504585, at *4 (N.D. Tex. June 20, 2023) (issuing broad authorization for expedited discovery in functionally identical crypto-fraud case and requiring that "any party served with a request for production shall produce all requested items within 72 hours of the request").

Here, Northfield requests expedited discovery for the purpose of locating the Victim's stolen assets and identifying the individual perpetrators of the pig-butchering scheme. [Dkt. 2 at 14–17]. To accomplish this, Northfield anticipates needing information held by non-parties, including "biographical and contact information associated with the Defendants' accounts," "IP-address and device logs showing the devices and locations from which the Defendants accessed their accounts," and more. *Id.* at 17. Because non-party banks and cryptocurrency exchanges hold most of the information Northfield seeks, Northfield also requests the Court's authorization to serve subpoenas. *Id.* If Northfield's subpoenas uncover information implicating "downstream entities" in the pig-butchering scam, it intends to serve subpoenas on those entities as well. *Id.*

This Court has authorized expedited discovery in tandem with temporary restraining orders

---

(1) [W]hether the plaintiff has made a prima facie case of actionable harm; (2) the specificity of the discovery request; (3) the absence of alternative means to obtain the subpoenaed information; (4) whether there is a central need for the subpoenaed information to advance the claim; and (5) the user's expectation of privacy.

*Cothran*, 2020 WL 6450498, at *2 (citations omitted). Plaintiff did not explicitly address these factors in the pending motion. *See generally* [Dkt. 2]. However, given its contents, the Court finds that Plaintiffs has made a sufficient showing on these factors.

freezing assets in cryptocurrency-fraud cases. *See, e.g.*, *Cohn*, 2024 WL 4525511, at *5. Finding this case similar in all relevant respects to those cases, the Court authorizes the scope of discovery requested by Northfield here.

### C. Alternative Service of Process

Finally, Northfield seeks authorization to serve process on Defendants via alternative methods. [Dkt. 2 at 17]. Under Federal Rule of Civil Procedure 4(f)(3), a district court may order service on foreign defendants via any method "reasonably calculated to give notice of the proceedings" and not prohibited by international agreement. *See* FED. R. CIV. P. 4(f)(3). Here, Northfield seeks to serve the Defendants via WhatsApp and Telegram. *See* [Dkt. 2 at 21].

The Court finds that Northfield has satisfied the requirements for alternative service under Rule 4(f)(3). First, Northfield has established that pig-butchering scams typically operate from Southeast Asia, specifically Cambodia, Myanmar and Thailand. [Dkt. 2-1 at ¶ 6]. Because the scheme that Defendants allegedly operated bears all the characteristics of a standard pig-butchering scam, the Court is satisfied that the Defendants are located abroad. *See* [Dkt. 1 at ¶¶ 33–40; Dkt. 2-1 at ¶¶ 2–3].

Second, the Hague Convention, which generally governs service of process on foreign defendants, does not apply here because the Defendants' physical addresses are unknown. *See* Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters art. 1, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163. Hence, no international agreement prohibits serving the Defendants via WhatsApp or Telegram.

Third, service on the Defendants via WhatsApp and Telegram is reasonably calculated to give Defendants notice of the proceedings. WhatsApp and Telegram were the Defendants' exclusive means of communicating with the Victim during the pendency of the pig-butchering scam. Accordingly, the Defendants are most likely to respond to communications concerning the pig-butchering scam via those

channels.[5]

## III. RELIEF GRANTED

### A. Temporary Restraining Order

For the reasons set out in the Motion, the Court finds that the accounts associated with the deposit addresses listed on pages 8 and 9 of Plaintiff's Proposed Order [Dkt. 2-3] should be frozen. Accordingly, the Court hereby **ORDERS** that Defendants and their agents, servants, employees, attorneys, partners, successors, assigns, and all other persons or entities through which they act or who act in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division or other device, or any of them, are hereby restrained from withdrawing, transferring, or encumbering any assets currently held by, for, or on behalf of the persons controlling the accounts associated with the above-referenced Receiving Addresses, or any business entity through which they act or which acts in active concert or participation with them; including but not limited to those assets currently held at or for the Receiving Addresses. In accordance with Fed. R. Civ. P. 65(b)(2), this Order will expire fourteen (14) days from its entry unless it is extended for good cause shown. No bond shall be required to be posted by Plaintiff.

### B. Expedited Discovery

The Court finds that Plaintiff's request to issue expedited discovery should be **GRANTED** for the reasons set out in the Motion. Plaintiff is authorized to serve subpoenas on the following third parties:

- Binance
- Cloudflare
- Amazon.com
- GoDaddy
- Identity Protection Service
- WhatsApp

---

[5] *See Fitzgerald v. Defendant 1*, No. 1:24-CV-21925, 2024 WL 3538245, at *3 (S.D. Fla. June 28, 2024) (authorizing service via Telegram message in pig-butchering case); *Licht v. Ling*, No. 3:23-CV-1018, Dkt. 19 (N.D. Tex. June 8, 2023) (authorizing service via WhatsApp in pig-butchering case).

- Telegram

All subpoenaed parties shall produce the materials sought in the subpoena to Plaintiff's counsel within seven (7) days of their receipt of Plaintiff's subpoena and this Order. The Court further authorizes Plaintiff to issue follow-on subpoenas seeking the same scope of information to additional internet-service providers and cryptocurrency exchanges determined to be in possession of relevant information based on information obtained from the initial subpoenas authorized herein

The Court finds that any privacy interest the Defendants have in the documents requested by Plaintiff is outweighed by the need to investigate and prosecute the theft and conversion alleged in the complaint. Such privacy concerns shall not be good cause for the subpoenaed party to withhold the requested material.

### C. Alternative Service

The Court finds that Plaintiff's request for authorization to serve the Defendants by alternative means should be **GRANTED** for the reasons set out in the Motion. Plaintiff is authorized to serve the Defendants by the following methods:

| Target | Method |
|--------|--------|
| Ava Lee | WhatsApp |
| Ava Lee | Telegram |

Service by the above methods shall constitute effective service of process on the Defendants for all purposes in this action.

It is so **ORDERED.**

**SIGNED this 12th day of March, 2026.**

*Michael J. Truncale*
Michael J. Truncale
United States District Judge